**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4847**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RUSSELL JAVON LINNEY,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (5:13-cr-00065-RLV-DCK-1)

Argued: March 22, 2016       Decided: April 26, 2016

Before TRAXLER, Chief Judge, and WILKINSON and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Traxler and Judge Keenan joined.

**ARGUED**: Chiege Ojugo Kalu Okwara, LAW OFFICE OF CHIEGE O. KALU OKWARA, Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF**: Jill Westmoreland Rose, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

In this case we must determine whether two burglaries that served as part of the predicate for Russell Linney's Armed Career Criminal Act ("ACCA") sentencing enhancement occurred on different occasions. See 18 U.S.C. § 924(e)(1). The district court ruled that the burglaries did in fact occur on different occasions. We now affirm.

I.

On August 8-9, 2013, Linney and two companions engaged in a crime spree that started with a pair of burglaries and ended with a high-speed police chase. During the chase, Linney drove the getaway car. When the pursuing officers eventually captured Linney and his companions, they learned that Linney had been in possession of a 9-mm handgun, but had one of his companions toss it out the window during the chase. The officers also found a 9-mm magazine clip in Linney's pocket.

On August 21, 2013, a federal grand jury charged Linney with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). On February 19, 2014, Linney pled guilty to the charge without a plea agreement.

In anticipation of Linney's sentencing hearing, a probation officer prepared a presentence report ("PSR"). The PSR took note of three North Carolina burglary convictions Linney had previously received and accordingly classified Linney as an

2

armed career criminal under the ACCA -- a classification that came with a fifteen-year mandatory minimum sentence. After considering the ACCA enhancement and all other relevant factors, the PSR recommended a sentence for Linney that included 188 to 235 months of incarceration.

Linney objected to the PSR, arguing that two of the three burglaries noted in the PSR occurred on the same occasion and thus both could not be used to support the ACCA enhancement. The government responded by contending that, although the two burglaries occurred on the same night and in close proximity, they were in fact separate criminal episodes. Linney and the government then submitted the state court records from the two burglary convictions to support their respective arguments. These records include the indictments, the plea transcript, the judgment, and an accompanying restitution worksheet.

The indictments provide the following details about the two burglaries. The first indictment charges Linney with "break[ing] and enter[ing] the dwelling house of Teresa Cornacchione, which was located at 319 North Oakwood Drive" in Statesville, "between the nighttime hours of 8:00 p.m. and 10:00 p.m.," on December 31, 2009. The indictment also alleges that Linney stole Ms. Cornacchione's guitar and television. J.A. 155. The second indictment charges Linney with "break[ing] and enter[ing] the dwelling house of James Wilson, which was located at 320 North

3

Oakwood Drive" in Statesville, "between the nighttime hours of 7:00 p.m. and 10:00 p.m.," on December 31, 2009. In contrast to the Cornacchione indictment, the Wilson indictment does not allege that Linney stole anything from Mr. Wilson's home. J.A. 156.

The plea transcript submitted to the district court shows that Linney pled guilty to both of the December 31, 2009 burglaries at the same time. It also shows that Linney simultaneously pled guilty to a slew of other crimes, including a burglary that occurred on December 9, 2010 (this burglary was used as the requisite third violent felony conviction for Linney's ACCA enhancement), seventeen breaking and entering offenses, two attempted breaking and entering offenses, and one possession of a stolen vehicle offense. J.A. 158-62.

The state court issued a consolidated judgment covering the three burglary convictions. Both this judgment and the plea transcript provide that Linney was to pay restitution for his crimes. J.A. 151, 161. The judgment states that the restitution was to be joint and several with codefendants as noted on an accompanying restitution worksheet, which was explicitly incorporated into the judgment by reference. J.A. 150-51.

The restitution worksheet in turn lists 20 different victims from Linney's various offenses, along with the restitution owed to each. J.A. 266-72. The restitution worksheet

4

also includes a box below each victim's name, noting whether another person was jointly and severally liable with Linney for the restitution owed to that victim. If another person was jointly and severally liable, the box would be checked and the other person's name would be noted. Ms. Cornacchione is listed as a victim in the restitution worksheet, but the box below her name remains unchecked, and no other person's name is noted. Mr. Wilson is not listed as a victim in the restitution worksheet at all. J.A. 266-72.

Back before the district court, Linney contended that the various state court records undermined the government's argument that the two December 31, 2009 burglaries occurred on different occasions. Although he acknowledged that the burglaries had different victims, Linney pointed out that the burglaries were committed at neighboring houses during a largely overlapping three-hour time period, and that they shared the same nature and objective. Moreover, Linney argued that the mere thirty feet separating the two houses did not allow him to make a conscious and knowing decision to commit the second burglary. Furthermore, Linney claimed that the joint and several liability provisions in the judgment and accompanying restitution worksheet suggest that he acted with an accomplice during the two burglaries, which would mean that he may have only burglarized one of the houses while his accomplice burglarized the other. Linney thus

5

concluded that the government had not shown that the two burglaries occurred on different occasions.

The government responded by arguing that the December 31, 2009 burglaries involved different victims and different street addresses, and were thus distinct criminal episodes. And as to the question of an accomplice, the government noted that Linney was charged individually in the two indictments, and suggested that the provisions stating that restitution was to be joint and several were perhaps an "oversight" or made in reference to "another case." J.A. 60-63.

The district court agreed with the government. It found that the two burglaries involved different victims, different locations, and different times. J.A. 65. The district court further found that any evidence of an accomplice derived from the various restitution records did "not rise to the level of a preponderance of the evidence in undermining the otherwise pertinent facts about the two offenses in question, namely that [Linney] was charged as a principal by himself[] [and] convicted by himself," without any reference to another person in the two indictments. J.A. 67-68. The district court thus concluded that any evidence from the restitution provisions was "insufficiently probative" to sustain Linney's objection, and ruled that the government had proved that the three North Carolina burglaries supporting the ACCA enhancement occurred on different occasions.

6

The district court then sentenced Linney to 235 months of incarceration. Linney timely appealed, challenging the district court's ruling that the two December 31, 2009 burglaries occurred on different occasions.

## II.

### A.

A defendant found guilty of violating the felon in possession prohibition, 18 U.S.C. § 922(g)(1), is subject to the ACCA fifteen-year mandatory minimum sentencing enhancement if he has three previous "violent felony" convictions. 18 U.S.C. § 924(e)(1). No one disputes that each of Linney's three North Carolina burglaries constitutes a "violent felony." For Linney to receive the ACCA enhancement, however, each of the three burglaries must also have been "committed on occasions different from one another." Id. The government bears the burden of proving that the burglaries occurred on different occasions by a preponderance of the evidence. United States v. Span, 789 F.3d 320, 324 (4th Cir. 2015) (citing United States v. Archie, 771 F.3d 217, 223 (4th Cir. 2014), cert. denied, 135 S. Ct. 1579 (2015)).

We review de novo the district court's ruling that Linney committed the three predicate burglaries on different occasions. Id. at 325. But we review for clear error the district court's factual findings made incident to this ultimate ruling. Id.

7

B.

To prove that each offense was committed on a different occasion, the government must show that each offense arose out of a "separate and distinct criminal episode." United States v. Boykin, 669 F.3d 467, 470 (4th Cir. 2012) (emphasis in original) (quoting United States v. Carr, 592 F.3d 636, 640 (4th Cir. 2010), cert. denied, 562 U.S. 844 (2010)). That is, each predicate offense must have "a beginning and an end," such that they each "constitute an occurrence unto themselves." Carr, 592 F.3d at 640 (quoting United States v. Letterlough, 63 F.3d 332, 335 (4th Cir. 1995)).

We have come to rely on five factors to determine whether predicate ACCA offenses were committed on different occasions: (1) whether the offenses "arose in different geographic locations"; (2) whether "the nature of each offense was substantively different"; (3) whether each offense "involved different victims"; (4) whether each offense "involved different criminal objectives"; and (5) whether "the defendant had the opportunity after committing the first-in-time offense to make a conscious and knowing decision to engage in the next-in-time offense." Span, 789 F.3d at 328 (quoting Carr, 592 F.3d at 644). Importantly, these five factors may be considered "together or independently" and the "strong presence" of any one factor "can dispositively segregate an extended criminal episode into a

8

series of separate and distinct episodes." Id. (quoting Carr, 592 F.3d at 644).

In undertaking this five-factor analysis, courts rely on "Shepard-approved sources." Span, 789 F.3d at 326 (citing Shepard v. United States, 544 U.S. 13 (2005)). In cases such as this that involve prior convictions based on guilty pleas, these sources consist of "conclusive judicial records" such as the indictment, judgment, any plea agreement, the plea transcript or other comparable record confirming the factual basis for the plea, id. at 326-27, and any document "explicitly incorporated" into one of the foregoing. United States v. Harcum, 587 F.3d 219, 223-24 (4th Cir. 2009), abrogated on other grounds as stated in, United States v. Aparicio-Soria, 740 F.3d 152, 155–56 (4th Cir. 2014).*

Linney does not dispute the existence of his predicate offenses. See Span, 789 F.3d at 326-27 (citing United States v. Washington, 629 F.3d 403 (4th Cir. 2011)). Linney also does not suggest that the district court erroneously identified the five factors used to make the different occasions determination or

---

* The "plea transcript" in this case differs from the document commonly called a "plea transcript" in federal practice. In this case, the "plea transcript" or "transcript of plea" is a North Carolina judicial record that contains the details of the defendant's plea. It is completed by the parties and signed by the defendant. J.A. 158-62. We have previously indicated that this judicial record is a Shepard-approved source. See Span, 789 F.3d at 324 n.2, 326-27.

improperly relied on non-Shepard-approved sources. He instead contends that the district court erred in applying the five factors to the two December 31, 2009 burglaries. As he did below, Linney argues that the government proved only one of the five factors. Specifically, Linney claims that the two burglaries occurred at the same location, because the burglarized houses were only thirty feet apart. He also claims that the nature and objective of each burglary was the same. And although Linney concedes that the burglaries involved different victims, he argues that the close proximity of the two houses prevented him from making a conscious and knowing decision to engage in the second burglary.

We cannot accept this view. It is undisputed that the indictments show that the burglaries occurred at two distinct street addresses, which means that they occurred at different geographic locations. The burglary of Ms. Cornacchione's house occurred at 319 North Oakwood Drive while the burglary of Mr. Wilson's house occurred at 320 North Oakwood Drive. And although Ms. Cornacchione's house and Mr. Wilson's house may stand only thirty feet apart, we agree with the district court that this distance gave Linney a sufficient opportunity to evaluate whether to commit another crime. Furthermore, Linney concedes that Ms. Cornacchione and Mr. Wilson were separately victimized by the two burglaries.

10

Linney may be correct to claim that the two burglaries shared the same nature and criminal objective, but the district court did not rely on these factors -- and it did not need to. As noted, sometimes the "strong presence" of just one factor can "dispositively segregate an extended criminal episode into a series of separate and distinct episodes." Span, 789 F.3d at 328 (quoting Carr, 592 F.3d at 644). Here the district court did not factually err in finding at least three of the five factors. It also did not err legally in concluding that the government proved by a preponderance of the evidence that the two December 31, 2009 burglaries occurred on different occasions.

Indeed, when the facts of Linney's case are compared to our precedent in this area, it is clear that Linney's arguments were properly weighed and found wanting. Most pertinent is our recent decision in Carr. There, the defendant broke into thirteen storage units located at a single address. Carr, 592 F.3d at 638. The district court ruled that each of the thirteen break-ins occurred on different occasions for purposes of the ACCA enhancement. Id. at 639. We affirmed the district court's ruling, noting that although the break-ins shared the same nature and criminal objective, they occurred at different locations, involved different victims, and the space between each storage unit gave the defendant an opportunity to decide whether to engage in the subsequent break-in. Id. at 645.

11

Were we to accept Linney's argument, we would need to somehow merge Ms. Cornacchione, Mr. Wilson, and their respective houses together. This we simply cannot do. Although different victims and obvious physical boundaries may not always be required to support a different occasions determination (e.g., breaking into a single victim's car and house may constitute different occasions, or a burglarizing adjacent apartment units may constitute different occasions), the uncontroverted record shows that these hallmarks of separateness were present here. We cannot accept Linney's invitation to turn a blind eye to the separate nature of his burglaries and thereby effectively rule that two crimes are no worse than one.

III.

Linney contends, however, that his case contains a wrinkle absent in Carr and similar cases. Specifically, Linney claims that the joint and several liability provisions in the consolidated judgment and accompanying restitution worksheet indicate that he committed the two December 31, 2009 burglaries with an accomplice.

It is true that the presence of an accomplice can complicate the different occasions analysis. See Carr, 592 F.3d at 643 n.5. For instance, if Linney worked with an accomplice on the night of December 31, 2009, Linney may have burglarized one of the houses while his accomplice simultaneously burglarized

12

the other. See Span, 789 F.3d at 329. This coordinated criminal operation would likely result in two convictions for Linney. Whether it would satisfy the different occasions analysis required for application of the ACCA enhancement is another question.

The record in this case, however, does not support Linney's suggestion of an accomplice. As the district court noted, the Shepard-approved sources, including the indictments and the judgment, show that Linney was charged alone and convicted alone. The district court was within bounds to rely on these documents to find that Linney committed the two burglaries alone.

Yet Linney points out that the judgment and accompanying restitution worksheet also provide that he was to be jointly and severally liable to pay restitution for his burglaries. And he notes that the restitution worksheet even names a Mr. Patrick Wagner as a codefendant in many of his crimes. Linney accordingly contends that he committed the two December 31, 2009 burglaries with an accomplice.

But Linney fails to note that, although these documents suggest that he sometimes committed his crimes in league with an accomplice, they also suggest that he acted alone on the night of December 31, 2009. The codefendant box adjacent to Ms. Cornacchione's name on the restitution worksheet is unchecked,

13

and the line used for listing another person's name is blank. Mr. Wilson's name is absent from the restitution worksheet, but this absence makes sense in light of the fact that the Wilson indictment does not allege Linney actually stole anything from Mr. Wilson's house. All in all, these sundry details only support the district court's finding that Linney committed the December 31, 2009 burglaries alone.

The briefing and argument in this case revealed that Linney made a diligent effort to find some positive proof in the state court records showing that he worked with an accomplice on December 31, 2009. There does not appear to be any such proof. Linney is thus left to speculate, asking the government in essence to prove the absence of an accomplice. But proving a negative is not a quest the government need undertake. Certainly it was not clearly erroneous for the district court to find based on the Shephard-approved sources that Linney alone committed the two December 31, 2009 burglaries during the three-hour time span alleged in the two indictments.

Finally, contrary to Linney's protestations, our recent decision in Span is readily distinguishable. There, as in this case, the defendant claimed that he worked with an accomplice, and that the presence of an accomplice meant his predicate ACCA offenses may not have occurred on different occasions. Unlike this case, however, the indictments, plea transcript, and

14

judgment from the state court in Span listed contradictory dates for the various offenses. Indeed, "[n]o single offense date for any [of the] predicate robbery conviction[s] [was] consistent across all three sources." Span, 789 F.3d at 325-26. Moreover, three of four offenses at issue occurred at the same location. Id. at 329. Owing to these deep contradictions in the record, we held that the government had failed to prove that the three offenses had occurred on different occasions. Unlike the situation in Span, nothing in the record before us calls into serious question the district court's determination that Linney alone committed the two December 31, 2009 burglaries on different occasions.

## IV.

Linney's receipt of the ACCA enhancement gave the district court a sentencing guidelines range of 188 to 235 months of incarceration. The district court sentenced Linney to the top end of that range -- 235 months. Linney cursorily suggests that this sentence is substantively unreasonable. We disagree. It was entirely proper for the district court to note that Linney harmed 31 different victims during his many offenses; that Linney's most recent pair of burglaries ended with a dangerous police chase; and that Linney appeared to be the leader in at least this latest chapter of his long history of criminal

activity. Accordingly, it was well within the district court's discretion to give Linney the sentence he received.

The judgment is

AFFIRMED.