**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4590**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RUSSELL JAVON LINNEY,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Max O. Cogburn, Jr., District Judge.  (5:13-cr-00065-MOC-DCK-1)

Submitted:  August 20, 2021                    Decided:  September 28, 2021

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Anthony Martinez, Federal Public Defender, Jared P. Martin, Assistant Federal Public Defender, Charlotte, North Carolina, Joshua B. Carpenter, Appellate Chief, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, Anthony J. Enright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Russell Linney appeals his sentence of 96 months in prison and three years of supervised release for possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1). Because Linney's sentence was reasonable and the district court committed no procedural error, we affirm.

I.

In August 2013, Linney, along with two associates, "engaged in a crime spree that started with a pair of burglaries and ended with a high-speed police chase." *United States v. Linney*, 819 F.3d 747, 749 (4th Cir. 2016). When the police eventually apprehended Linney, they learned that he had been in possession of a 9-mm handgun and they found a 9-mm magazine clip in his pocket. *See id.* Linney had stolen the handgun in a burglary the previous day. *See* J.A. 96.

This was not Linney's first brush with the law. In fact, he had previously been convicted of more than thirty-six different crimes, including for a series of approximately two dozen burglaries that had harmed "31 different victims." *Linney*, 819 F.3d at 754; *see also* J.A. 99–111. In one such burglary he stole almost $50,000 in jewelry. *See* J.A. 110. In another, he stole over $300,000 in computers and jewelry. *See* J.A. 107. Linney's multiple felony convictions prohibited him from possessing a firearm under federal law and he pleaded guilty to one count of possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1).

2

As Linney had three prior convictions for second-degree burglary, the district court concluded that the Armed Career Criminal Act (ACCA) applied, under which the Guidelines range was 188 to 235 months of incarceration. The district court sentenced Linney to 235 months' imprisonment and we affirmed, concluding that the sentence was substantively reasonable and that the record did not contradict the district court's determination that the ACCA applied. *See Linney*, 819 F.3d at 754.

Five months later, however, Linney moved to vacate his sentence under 28 U.S.C. § 2255, arguing that newly discovered state court documents demonstrated that two of the predicate burglaries in fact had occurred on the same occasion and that he was therefore ineligible for an ACCA sentencing enhancement. The district court refused to relitigate the validity of Linney's initial sentencing, holding that the documents could have been discovered "through reasonable investigation" and that the claim was therefore barred by the law-of-the-case doctrine. *Linney v. United States*, 2019 WL 2202802, at *7 (W.D.N.C. May 21, 2019). Nonetheless, the court vacated Linney's sentence, finding that the initial sentence exceeded the statutory maximum that would have applied without the ACCA enhancement. *Id.*

Before resentencing, Linney's advisory Guidelines range was recalculated, this time under the 2018 Guidelines Manual rather than the 2013 Guidelines Manual. Incidentally, this ensured that the negligence of Linney's counsel proved a windfall to Linney. Had Linney raised the state court documents in his initial sentencing, the 2013 Guidelines Manual would have prescribed a Guidelines range of 84 to 105 months absent the ACCA

3

enhancement. *See* S.J.A. 90. Since the 2018 Guidelines Manual does not classify burglary as a crime of violence, however, Linney faced a Guidelines range of only 46 to 57 months in prison. *See* J.A. 127. In addition, the Guidelines advised a term of one to three years of supervised release. *See* J.A. 127.

At the resentencing hearing, Linney requested a sentence of time served, or 77 months in prison, contending that he had rehabilitated himself in prison, would be assisted on release by a supportive community, and would have opportunities for employment. The district court engaged in a dialogue with defense counsel at this point, expressing skepticism as to whether good behavior on release would be sufficiently certain given Linney's lengthy criminal history. *See* J.A. 53–67. The government by contrast requested the statutory maximum sentence of 120 months, citing Linney's extensive criminal record and the seriousness of his crimes, as well as several disciplinary infractions that Linney had sustained during his time in prison. After hearing these arguments, the court concluded that it would choose a "middle ground" and sentenced Linney to 96 months in prison. J.A. 76. In addition, the court sentenced Linney to a three-year term of supervised release. Without objection, it ordered that Linney comply with the standard conditions of supervised release adopted in the Western District of North Carolina.

Linney appealed, contending that: (1) the district court procedurally erred by failing to consider Linney's non-frivolous arguments and by failing to justify its above-Guidelines sentence; (2) the sentence imposed was substantively unreasonable; and (3) the district

4

court erred by failing to explain its term of supervised release as well as two of the discretionary conditions of supervised release that it imposed.

## II.

Linney first argues that the district court committed procedural error by failing to adequately respond to Linney's nonfrivolous arguments for time served. In particular, Linney argues that the district court failed to address his youth and immaturity at the time of his offense, his subsequent growth and rehabilitation, and the employment goals and opportunities that he would have upon being released. We reject this challenge because the district court carefully responded to Linney's arguments and took pains to explain its sentence.

It is true of course that "the sentencing judge should articulate enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). This standard requires that the district judge give thoughtful consideration of the arguments presented by the parties. "But this admonition focuses on the whole of a defendant's argument and does not require the court to address every argument a defendant makes." *United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020). If we are persuaded that the judge has considered the arguments below and has provided a reasoned basis for accepting or rejecting them, that is enough. We are persuaded here.

Throughout the resentencing hearing, the district court engaged with defense counsel, responding to each of the arguments raised for a lower sentence and explaining why it chose not to credit them. When counsel argued that Linney had committed all of his crimes at a young age and had since matured in prison, the court responded that those factors were speculative as it was "difficult to know where somebody is now" and that it was "very, very difficult to know" whether a person's attitude had in fact changed during their time in prison. J.A. 60. When counsel argued that Linney's community support and employment opportunities would assist in his rehabilitation, the court noted that such support had not deterred Linney from his previous criminal conduct. *See* J.A. 55 ("It hasn't worked for him so far. He is just out running around with guns, driving cars, breaking in places and running from the law."); J.A. 77 ("Mr. Linney you're good at—you can play multiple instruments, but instead of doing that you decided to go out and break into homes."). And throughout, the court emphasized the problem of Linney's past recidivism and the seriousness of his past conduct. *See, e.g.*, J.A. 53, 55, 66, 77.

In short, the district court acknowledged and considered Linney's arguments that he had committed the crime at a young age, that he had matured during his time in prison, and that he would be well-suited for rehabilitation upon release. But it was reluctant to credit these arguments, given Linney's long history of recidivism and the difficulties of extrapolating from Linney's attitude in prison to his behavior upon release. The district court was entitled to reach that conclusion and it did so in a sufficiently transparent manner to convince us that it had a reasoned basis for imposing the sentence that it chose.

6

Given the district court's engagement with each of Linney's arguments, Linney's challenge boils down instead to the claim that the court should have responded to individual statements made at resentencing. For instance, Linney suggests the court failed to consider a specific report by the United States Sentencing Commission on youthful offenders, failed to address the contents of some of Linney's letters of support, and did not reference Linney's specific job opportunities upon release. These arguments fall flat. As we have said before, "[w]here a sentencing court hears a defendant's arguments and engages with them at a hearing, [this Court] may infer from that discussion that specific attention has been given to those arguments." *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020). The court need not respond *seriatim* to every statement made by defense counsel. *See Arbaugh*, 951 F.3d at 174.

Linney also argues that the district court committed procedural error by failing to adequately justify its above-Guidelines sentence and by not adhering to this court's departure framework. But the court never characterized its sentence as an upward departure; rather, the court repeatedly made clear that the sentence was an upward *variance*. *See* J.A. 78–79. And the court explained why the § 3553(a) factors justified a variance. It referenced "the type of criminal record, and the seriousness of the matters" as well as the "complete recidivism of Linney," and emphasized the need to "deter[] others who think that breaking into homes is okay in North Carolina." J.A. 74. The court determined that the Guidelines did not adequately address the "seriousness, the recidivism"

7

and "the sheer numbers" of Linney's past offenses, and hence that an upward variance was warranted. J.A. 79.

Nonetheless, the court refrained from imposing the maximum sentence. It concluded that doing so as a "knee-jerk reaction" would be inappropriate and it settled on "some middle ground that can take care of this matter with regard to this defendant, and will promote respect for the law" but also "provide just punishment for this offense." J.A. 75–76; *see also* J.A. 79. Such individualized consideration is just what we require at sentencing and easily satisfies the district court's responsibility to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007). We therefore find no procedural error with the sentence imposed.

III.

Next, Linney contends that his sentence was substantively unreasonable because the district court placed too much weight on his past criminal history. But district courts have "extremely broad discretion" in determining how to weigh the § 3553(a) factors, *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011), and "the fact that a 'variance sentence deviates,' even 'significantly,' from the Guidelines range 'does not alone render it presumptively unreasonable,'" *Nance,* 957 F.3d at 215 (quoting *United States v. Rivera-Santana*, 668 F.3d 95, 106 (4th Cir. 2012)). It was no abuse of discretion for the district court to conclude that Linney's extensive criminal history—including a long list of serious

offenses that victimized a host of people—justified an above-Guidelines sentence. Indeed, we previously concluded that Linney's initial sentence of 235 months—over twice as long as his current sentence—was substantively reasonable given that "Linney harmed 31 different victims during his many offenses; that Linney's most recent pair of burglaries ended with a dangerous police chase; and that Linney appeared to be the leader in at least this latest chapter of his long history of criminal activity." *Linney*, 819 F.3d at 754. And had Linney been resentenced under the 2013 Guidelines Manual, which would have applied had his counsel diligently discovered the state court documents, he would have faced a Guidelines range of 84–105 months, which squarely includes the 96-month sentence imposed here. We therefore reject Linney's argument that his sentence was substantively unreasonable.

IV.

Finally, Linney challenges his three-year term of supervised release, as well as two of the discretionary conditions of supervised release. Linney argues first that the court failed to consider the § 3553(a) factors before imposing its three-year term. But "a court's sentencing rationale . . . can support both imprisonment and supervised release." *United States v. Aplicano-Oyuela*, 792 F.3d 416, 425 (4th Cir. 2015). A district court is not required to "conduct two § 3553(a) analyses, one related to the term of imprisonment and a second related to the term of supervised release." *Id.* (quoting *United States v. Clark*, 726 F.3d 496, 501 (3rd Cir. 2013)). Since the court's § 3553(a) analysis was more than adequate

9

for Linney's sentence as a whole, the court need not have separately analyzed those factors before imposing the term of supervised release.

Linney also challenges two conditions of his supervised release. Condition #16 provides that Linney "shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer." J.A. 88. Condition #17 provides that Linney "shall submit his person, residence, office, vehicle and/or any computer system . . . to a search, from time to time, conducted by any U.S. Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant." J.A. 88. Linney must also "warn other residents or occupants that such premises or vehicle may be subject to searches pursuant to this condition." J.A. 88.

Since Linney failed to object to these conditions at his resentencing hearing, plain-error review applies. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 764 (2020). But even on abuse-of-discretion review, we would not sustain Linney's challenge. In *United States v. Boyd*, 5 F.4th 550 (4th Cir. 2021), we recently spoke to the validity of conditions of supervised release. There, we vacated several such conditions where the defendant had filed written objections and the district court imposed the conditions without addressing those objections. *See id.* at 553, 557–58. Nonetheless we recognized that "a court's overarching explanation of a sentence 'as a whole' may be procedurally sufficient in some cases." *Id.* at 559 (quoting *United States v. Huntley*, 594 F. App'x 108, 111 (4th Cir. 2014) (per curiam)). In particular, where "the reasons for a given condition are 'self-

10

evident,' and a defendant fails to raise nonfrivolous objections, a 'sentence-as-a-whole' explanation can suffice." *Id.* (quoting *United States v. McMiller*, 954 F.3d 670, 677 (4th Cir. 2020)).

Such is the case here. Linney committed a series of burglaries with the assistance of other individuals, in some instances stealing hundreds of thousands of dollars' worth of valuables. Condition #16 prevents Linney from associating with other felons and thus from committing future burglaries, while condition #17 also deters such burglaries by preventing Linney from concealing stolen goods and valuables. The conditions are thus obviously tied to deterring Linney from resuming his criminal activity upon release and are sufficiently supported by the court's explanation of Linney's sentence as a whole.

Finally, we reject Linney's argument that the supervised release conditions violate his constitutional rights. While Linney argues that he might violate condition #16 inadvertently, the "general rule" is that "probationers may not be punished for inadvertent violations." *United States v. Van Donk*, 961 F.3d 314, 324 (4th Cir. 2020). And while Linney argues that condition #17 permits unconstitutional searches, the Supreme Court has made clear that a warrantless search of a person on supervised release is not unconstitutional. *See Samson v. California*, 547 U.S. 843, 857 (2006). We therefore affirm the term of supervised release and the conditions imposed by the district court.

\* \* \*

We decline Linney's invitation to disrupt the sentencing decisions of the district court. That court thoroughly engaged with the arguments raised by defense counsel and

11

imposed a reasonable sentence in light of Linney's lengthy criminal history. Likewise, the court committed no error in imposing the term of supervised release or the discretionary conditions of supervised release that it chose. The judgment of the district court is

*AFFIRMED*.