**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 18-4907**

───────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAMAAL RAY CURTIS,

Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Malcolm J. Howard, Senior District Judge.  (5:17-cr-00011-H-1)

───────────────

Argued:  September 22, 2023                              Decided:  March 26, 2024

───────────────

Before GREGORY and RICHARDSON, Circuit Judges, and Patricia Tolliver GILES, United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────────

Affirmed by unpublished opinion. District Judge Giles wrote the opinion in which Judge Gregory and Judge Richardson joined.

───────────────

**ARGUED:**  Christopher S. Edwards, WARD & SMITH, PA, Wilmington, North Carolina, for Appellant. David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

GILES, District Judge:

On October 28, 2003, Jamaal Ray Curtis, along with two accomplices, broke into three different homes located a few miles apart. In 2004, Curtis pleaded guilty to three counts of felonious breaking and entering and was sentenced to a maximum of eleven months in state prison. In 2018, Curtis was convicted of being a felon in possession of a firearm. Finding that the three October 2003 break-ins constituted a different occasion separate from one another, the district court sentenced Curtis to a minimum term of fifteen years' imprisonment under the Armed Career Criminal Act ("ACCA"). For the reasons that follow, we affirm the district court's judgment.

## I.

In July 2016, after a 2015 drug conviction, Curtis was placed on post-release supervision. *See* J.A. 50–54. As a condition of his supervision, Curtis agreed to abide by a curfew, requiring him to be in his father's home from 7:00 p.m. to 6:00 a.m. J.A. 58, 101–02. On the morning of December 13, 2016, as part of a multi-agency operation known as "Operation Silent Night," officers from the North Carolina Department of Public Safety ("NCDPS") and the Oxford, North Carolina Police Department set out to visit Curtis at, and conduct a search of, his father's home. J.A. 150–51. Before arriving at the address, Oxford Police Sargent Kevin Dickerson disclosed to the other officers that he had received an anonymous tip suggesting that Curtis was living with his girlfriend and dealing drugs out of her home. *Id.* Sargent Dickerson and two NCDPS officers arrived at the girlfriend's house just after 6:30 a.m. J.A. 151–52. After knocking on the door, the officers were given permission to enter the home. *Id.* Once inside, the officers saw Curtis and arrested him,

2

at which point Curtis made an unprotected statement that he was in possession of a firearm. *Id.*

In January 2017, a federal grand jury indicted Curtis on two federal charges, including being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). J.A. 28–29. On January 11, 2018, Curtis pleaded guilty, by way of a written plea agreement, to being a felon in possession of a firearm. J.A. 81–84. In the presentence investigation report, the U.S. Probation Office recommended that Curtis be sentenced as an armed career criminal under the ACCA, 18 U.S.C. § 924(e), because Curtis had three breaking-and-entering convictions. J.A. 327. The Probation Office, in making its recommendation, noted the following:

> On October 28, 2003, the defendant broke into a dwelling occupied by CLK on Wilson Town Road in Stovall, North Carolina, and stole a 12-gauge shotgun and various other items valued at $3,890. On the same day, he broke into a dwelling occupied by BRW on Highway 15N in Stoval and stole a television and other items valued at $800. Finally, the defendant broke into a dwelling occupied by EE on Leaning Oak Road in Oxford, North Carolina, with the intent to commit larceny.

J.A. 318.

On December 4, 2018, the district court held Curtis's sentencing hearing. J.A. 244. At the outset of the hearing, the court addressed Curtis's objections to his armed career criminal status. *See* J.A. 245–47. Relevant to this appeal, Curtis first argued that the presence of accomplices in each of his three qualifying convictions made it possible that the three crimes coincided with each other and therefore, the Government had failed to meet its burden of proving that Curtis committed all three of his predicate offenses.

3

J.A. 196–97. Curtis also argued that because the three breaking-and-entering crimes took place on the same day and within miles of each other, they were a part of the same occasion, thus making Curtis's convictions a single ACCA predicate offense, not three. *See* J.A. 199–200.

The district court rejected Curtis's arguments. Applying this Court's multi-factor analysis for determining whether offenses occur on different occasions, the district court found that (1) the three offenses occurred at three separate locations, with two of the homes located 1.9 miles apart and the third home located 7.3 miles away; (2) though each offense involved a "break-in of a small, unoccupied country store,"[1] the property taken from at least two of the locations was different; (3) there were three different victims; and (4) given the mileage separating the three locations, Curtis had the opportunity to make a conscious decision not to commit the next offense before doing so. J.A. 251–53. Consequently, the court concluded that the Government met its burden of showing that the three offenses occurred on occasions different from one another, and that the ACCA designation was appropriately applied. J.A. 253. With the ACCA enhancement, Curtis faced an advisory sentencing guidelines range of 188 to 235 months. J.A. 257. The court subsequently sentenced Curtis to a term of 188 months in prison. J.A. 265, 270.

Curtis timely appealed. This Court held the appeal in abeyance pending the Supreme Court's decision in *Wooden v. United States*, 595 U.S. 360 (2022). J.A. 14. The

---

[1] Although the district court referenced a "store," the record reflects that the break-ins were of people's homes. *See* J.A. 222–24.

4

only issue remaining on appeal is whether the district court erred in sentencing Curtis as an armed career criminal under the ACCA.[2]

## II.

Under the ACCA, a defendant who has violated 18 U.S.C. § 922(g) is subject to a mandatory minimum sentence of fifteen years in prison if he "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another[.]"  18 U.S.C. § 924(e)(1).  We review *de novo* a district court's legal determination that a defendant committed three predicate offenses on different occasions.  *See United States v. Linney*, 819 F.3d 747, 751 (4th Cir. 2016).  The court's "factual findings made incident to [its] ultimate ruling" are reviewed for clear error.  *Id*.  In determining whether a defendant may be sentenced under the ACCA, a court "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  *Shepard v. United States*, 544 U.S. 13, 16 (2005).  The burden is on the Government to prove, by a preponderance of the evidence, the elements

---

[2] Curtis initially raised two arguments on appeal: (1) the district court erred in denying his motion to suppress the firearm on the grounds that Curtis had been unlawfully seized under the Fourth Amendment; and (2) the district court erred in sentencing Curtis under the ACCA.  Appellant Br. at 1–2.  Unless he enters a conditional guilty plea, a defendant who pleads guilty waives his right to appeal "all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." *United States v. Buster*, 26 F.4th 627, 631 (4th Cir. 2022).  Because Curtis pled guilty without entering into a conditional plea, he waived his right to appeal the denial of his motion to suppress. *See United States v. Rodgers*, 595 F. App'x. 196, 197 n.1 (4th Cir. 2014) ("Because we conclude that [the defendant] did not enter a conditional guilty plea, we do not review the district court's denial of his motion to suppress.").

necessary to support application of the ACCA sentencing enhancement. *See United States v. Archie*, 771 F.3d 217, 223 (4th Cir. 2014).

### III.

Curtis raises two arguments in support of his claim that the district court erred in sentencing him under the ACCA. First, Curtis argues that the presence of accomplices during the commission of the underlying crimes giving rise to his three qualifying convictions prevents the Government from establishing that the crimes occurred on separate occasions. Appellant Br. at 18–21. Second, Curtis argues that the Supreme Court's recent decision in *Wooden* abrogates this Court's occasions-clause jurisprudence, and under *Wooden*, the crimes underlying Curtis's three breaking-and-entering convictions occurred on one occasion. *See id.* at 8, 21–26. We address each argument in turn.

### A.

Curtis asserts that the Government has failed to meet its burden of proving that he is eligible to be sentenced under the ACCA. *See* Appellant Br. at 17. Central to Curtis's argument is the possibility that the three break-ins at issue happened simultaneously because the relevant records—namely, the 2004 plea transcript from Curtis's state court proceedings—reveal that the break-ins occurred on the same day while Curtis was working with two accomplices. *Id.* at 18–19. According to Curtis, this possibility defeats the Government's ability to show that the "first crime ended before [the] second crime began" and establish that his qualifying convictions arose on three separate occasions. *Id.* at 21 (quoting *United States v. Tucker*, 603 F.3d 260, 266 (4th Cir. 2010)). We disagree.

6

This Court has recognized that "the presence of accomplices [may] complicate[] th[e ACCA] analysis." *United States v. Ellis*, No. 20-4057, 2022 WL 2128835, at \*2 (4th Cir. June 14, 2022) (per curiam). On at least three occasions, this Court has reversed lower courts' decisions to sentence defendants under the ACCA, finding that ambiguity in the record created uncertainty as to whether those defendants, and not their accomplices, committed the predicate offenses at issue. *See, e.g.*, *Tucker*, 603 F.3d at 266 (vacating the defendant's sentence under the ACCA because the indictments "indicate[d] that [the defendant] acted with an accomplice but provide[d] no information indicating that [the defendant] *himself* participated in the burglary of more than one storage unit"); *United States v. Span*, 789 F.3d 320, 329–30 (4th Cir. 2015) (finding application of the ACCA inappropriate where three of the four underlying robberies occurred on the same day, some involved the same location, and the defendant acted with an accomplice); *Ellis*, 2022 WL 2128835, at \*2 (concluding that the district court erred in sentencing the defendant under the ACCA because the defendant's three underlying offenses were committed with three co-conspirators and the record did not reveal whether the defendant committed the crimes sequentially or simultaneously with the aid of these accomplices). Curtis's case is easily distinguishable from these prior decisions.

The plea transcript from the 2004 state court proceedings provides that, as a factual basis for Curtis's guilty plea to "three counts of felonious breaking and entering[,]" "the State's evidence would [have] show[n] that" on October 28, 2003, "Mr. Jamaal Ray Curtis, along with co-defendants, . . . , did break into [one] home;" then, on the same day, "[Curtis], along with co-defendants, broke into [a second] home[;]" and finally "[Curtis], along with

his two co-defendants broke into [a third] home" before being apprehended by police. J.A. 222–24. Despite Curtis's contentions to the contrary, the plea transcript plainly reads that Curtis was an active participant in each break-in regardless of the presence of any accomplices.

Moreover, the record further indicates that Curtis and his co-defendants were apprehended *together* after the break-ins when their vehicle, which contained many of the items reported stolen from two of the homes, was pulled over during a traffic stop. J.A. 223–24. We find no inconsistencies in the record to suggest that the break-ins may have occurred simultaneously, rather than taking place one after the other. Accordingly, the district court did not err in finding that the Government met its burden of proving that Curtis committed each of the three break-ins, which constitute ACCA predicate offenses.

## B.

Next, Curtis argues that the Supreme Court's decision in *Wooden* precludes application of the ACCA. Appellant Br. at 21. Curtis's argument is twofold. First, he argues that *Wooden* abrogates this Court's occasions-clause jurisprudence. *Id.* at 8, 18 n.1. Curtis then argues that under the *Wooden* analysis, his three predicate offenses occurred on one occasion because the timing, location, and character and relationship of the three breaking-and-entering offenses show that the crimes involved a common scheme, and they took place over the course of a single afternoon in three locations separated by less than ten miles. *Id.* at 23–24. We first address Curtis's abrogation argument before assessing whether, as a matter of law, the three break-ins underlying Curtis's qualifying convictions were committed on separate occasions.

8

1.

In *Wooden*, the Supreme Court rejected an interpretation of the occasions-clause that would permit satisfaction of the clause "whenever crimes take place at different moments in time." 595 U.S. at 365. Thus, it abrogated the approach taken by the Fifth, Seventh, Eighth, and Eleventh Circuits in favor of a "more holistic inquiry" that considers other factors. *Id.* at 365, 369. Under *Wooden*'s multi-factored analysis, a court should consider timing, location, and "the character and relationship of the offenses" to determine whether offenses occurred on occasions different from each other. *Id.* at 369. *Wooden* did not explicitly state the impact, if any, that the decision had on this Court's occasions-clause jurisprudence.[3] For the reasons explained below, we find that our approach to determining whether multiple offenses occurred on the same or different occasions is consistent with the *Wooden* analysis.

This Court's occasions-clause multi-factored analysis requires that a district court consider the following five factors: "(1) whether the offenses 'arose in different geographic locations'; (2) whether 'the nature of each offense was substantively different'; (3) whether each offense 'involved different victims'; (4) whether each offense 'involved different criminal objectives'; and (5) whether 'the defendant had the opportunity, after committing the first-in-time offense, to make a conscious and knowing decision to engage in the next-

---

[3] *Wooden* cited favorably to a First Circuit case, *United States v. Stearns*, 387 F.3d 104 (1st Cir. 2004), as an example of a multi-factored approach to the ACCA. *Wooden*, 595 U.S. at 365 n.2. *Stearns* was based, in part, on this Court's approach in *United States v. Letterlough*, 63 F.3d 332 (4th Cir. 1995). *See Stearns*, 387 F.3d at 108.

in-time offense.'" *Linney*, 819 F.3d at 751 (citation omitted); *see also Letterlough,* 63 F.3d at 335–36. Thus, we find that the very factors that *Wooden* listed as key considerations— timing, location, and the character and relationship of the offenses, *Wooden*, 595 U.S. at 369–70—are factors that are also considered under this Court's multi-factored analysis.

First, the location factor is explicitly listed in both *Letterlough* and *Wooden*. *See Letterlough*, 63 F.3d at 335 (in determining whether predicate offenses took place on different occasions, "courts have asked whether the offenses arose in different geographic locations[.]"); *Wooden*, 595 U.S. at 369 (providing that "[p]roximity of location is [] important" in evaluating the ACCA's three-occasions requirement). Additionally, *Wooden*'s evaluation of the "character and relationship" of the offenses is arguably representative of the second and fourth *Letterlough* factors—consideration of whether the nature of each offense is distinct, and whether each offense involved a different criminal objective. *Letterlough*, 63 F.3d at 335–36. In fact, in describing what is meant by "character and relationship," *Wooden* provided that the factor involves considering whether the offenses "share a common scheme or purpose[,]" explaining that "[t]he more similar or intertwined the conduct giving rise to the offenses[,]" the more likely they are to compose one occasion. *Wooden*, 595 U.S. at 369. Finally, under both this Court and the Supreme Court's analyses, "timing remains a relevant factor in determining whether offenses were committed on different occasions." *United States v. Smith*, No. 20-4102, 2022 WL 2826187, at *2 (4th Cir. July 20, 2022) (per curiam) (concluding that for this reason, "the Supreme Court did not reject the last *Letterlough* factor in *Wooden*.").

10

Curtis acknowledges that the multi-factored approach advocated for in *Wooden* has already been adopted by this Court. Appellant Reply at 2. Nevertheless, Curtis argues that *Wooden*'s reasoning and application of the multi-factor test contradicts this Court's occasions-clause jurisprudence. *Id.* at 4. Curtis is correct that a reading of this Court's prior precedent that would permit application of the ACCA solely because a defendant's predicate offenses are temporally distinct would not square with the *Wooden* decision. The Supreme Court has expressly stated that an occasion may "encompass a number of non-simultaneous[,]" "temporally discrete offenses." *Wooden*, 595 U.S. at 367. With this in mind, we acknowledge that it is plausible that some of our pre-*Wooden* decisions would come out differently today in light of the Supreme Court's ruling.[4]

However, the possibility that this Court's multi-factored analysis may have been applied differently in some prior cases does not eviscerate the soundness of our analysis or its applicability to the case at hand. This is underscored by the fact that under both *Wooden* and this Court's occasions-clause jurisprudence, an occasion, for the purposes of the ACCA, is demarcated by a different criminal event or episode. *See Wooden*, 595 U.S. at 367 (defining an occasion to mean "an event or episode[.]"); *United States v. Leeson*, 453 F.3d 631, 640 (4th Cir. 2006) ("[F]or purposes of determining the applicability of the

---

[4] For instance, in *United States v. Carr*, we held that the breaking and entering of thirteen storage units at a single storage facility owned by at least ten different individuals constituted separate and distinct criminal episodes for ACCA purposes. 592 F.3d 636, 645 (4th Cir. 2010). *Carr* is factually indistinguishable from *Wooden*. In *Wooden*, the Supreme Court held that the breaking and entering of ten different storage units at the same storage facility did not constitute separate occasions different from one another. 595 U.S. at 368–69. Therefore, if decided today, *Carr* would have a different result.

ACCA, offenses occur on occasions different from one another when each offense '*arose out of a separate and distinct criminal episode.*'") (citation omitted).  For these reasons, we find that *Wooden* does not abrogate this Court's occasions-clause jurisprudence and that, under both this Court's multi-factored analysis and the test established in *Wooden*, Curtis's three breaking-and-entering convictions arose out of three different occasions.

2.

At Curtis's sentencing hearing, the district court applied the *Letterlough* factors and concluded that Curtis's predicate offenses—the three break-ins—were committed on different occasions.  J.A. 251–53.  The court did not err in making this determination.  The record shows that the crimes took place at three different locations, separated by 1.9 and 7.3 miles, respectively.  J.A. 222–23.  This fact establishes that the offenses arose in different geographic locations, and that Curtis had the time and opportunity to think about the next break-in before making the conscious decision to commit the offense.  Furthermore, because Curtis, along with his co-defendants, broke into three different homes, the crimes involved three different victims.  Finally, the fact that different types of items were taken from the homes undermines the idea that the nature of the crimes was similar.[5]  Accordingly, under our multi-factored analysis, Curtis's three predicate offenses were committed on different occasions.

---

[5] In one home, Curtis and his co-defendants stole a leather jacket; a twelve-gauge shotgun, a BB pistol, a digital camera; a computer, and U.S. currency, along with other items.  In another home, they stole a television, sewing machine, and a microwave.  J.A. 223.

Because we find that our multi-factored approach to the ACCA is consistent with *Wooden*, then also, under *Wooden*, each break-in that Curtis committed constitutes a separate occasion. Here, as stated earlier, Curtis was convicted of breaking and entering three different homes—in other words, three distinct locations. Likely recognizing that the three differing locations cut against his argument that the crimes occurred on one occasion, Curtis argues that location is not dispositive in this case.[6] Appellant Reply at 8. Curtis instead contends that because his underlying crimes occurred over the course of a single afternoon and all involved break-ins into people's homes, the crimes were a part of a common scheme. Appellant Br. at 23. In doing so, Curtis compares the facts of his case to a wedding, which the Supreme Court described as a classic example of a single "occasion[,]" even though the event takes place over several hours and may span different locations. *Id.*; *see also Wooden*, 595 U.S. at 367.

The Court disagrees with the application of this wedding analogy to Curtis's crimes. Unlike the wedding activities that are all designed to celebrate the happy couple, nothing in the record establishes a link between the break-ins. This is particularly emphasized by the fact that, as noted above, the property stolen from the homes varied greatly and there was no link between Curtis's victims – as opposed to the *Wooden* victims who all shared the same storage company. *See* J.A. 222–23, 252. Similarly, the varied distances between the homes raises doubt as to whether the break-ins had any particular rhyme or reason to

---

[6] Curtis appears to ignore the fact that, in *Wooden*, the Supreme Court identified location as a single factor that, in many cases, may "decisively differentiate occasions." *Wooden*, 595 U.S. at 369–70.

13

them at all. That the offenses all involved break-ins into homes is not, in and of itself, enough to constitute a common scheme or purpose.

Finally, there is the issue of timing. The Supreme Court explained that while "[o]ffenses committed close in time" will often constitute one occasion, "offenses separated by substantial gaps in time or significant intervening events" will not. *Wooden*, 595 U.S. at 369. Curtis argues that because the record does not provide the time that each break-in occurred (other than providing that the crimes took place on the same afternoon), the Court should find that the three predicate offenses were part of the same occasion. *See* Appellant Br. at 21, 23–24.

We are unpersuaded by Curtis's argument that the record's failure to illuminate a specific time at which Curtis committed each break-in leans in favor of finding that the break-ins were a part of one occasion—especially when the weight of the other two *Wooden* factors leads us to conclude that each of Curtis's predicate offenses occurred on different occasions.[7]  As stated, the offenses occurred some miles apart from each other,

---

[7] Curtis also asserts that, considering the ACCA's history and purpose, he is not the type of "'revolving door' felon[]" that the *Wooden* majority found to be the statute's target. Appellant Br. at 21–22 (quoting *Wooden*, 595 U.S. at 375). While the *Wooden* majority stated that the ACCA is meant to target "a particular subset of offenders"—"'revolving door' felons"—who commit a number of serious crimes "as their means of livelihood[,]" the Court explained that the ACCA's history and purpose should only be considered when courts are faced with "hard cases" in which one or more of the factors do not decisively differentiate one occasion from another. 595 U.S. at 370, 375 (first quoting *Begay v. United States*, 553 U.S. 137, 147 (2008); then quoting *Taylor v. United States*, 495 U.S. 575, 587 (1990)). For the reasons explained above, we find that Curtis's case is not one of these "hard cases." Rather, a "straightforward and intuitive" application of the *Wooden* factors reveals that Curtis's predicate offenses were committed on different occasions. *Id*. at 369.

14

involved three distinct locations, and there is no indication that the crimes shared a similar criminal objective or were a part of a common scheme or purpose.  Accordingly, the district court did not err in sentencing Curtis as an armed career criminal under the ACCA.

## IV.

For the reasons set forth in this opinion, we affirm the judgment of the district court.

*AFFIRMED*

15