**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4639

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JORGE ROMERO GONZALEZ,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:24-cr-000162-CMH-WEF-1; 1:24-mj-00165-WEF-1)

Submitted: November 7, 2025                    Decided: February 4, 2026

Before WILKINSON and NIEMEYER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Timothy H. Gray, KATTEN MUCHIN ROSENMAN LLP, Washington, D.C.; Cadence Mertz, Assistant Federal Public Defender, Patrick Bryant, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Erik S. Siebert, United States Attorney, James Reed Sawyers, Assistant United States Attorney, Kristin S. Starr, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a bench trial conducted by a federal magistrate judge, Jorge Romero Gonzalez was convicted of possession of cocaine, driving while intoxicated, and having an open container of alcohol.[1] He appeals, challenging the denial of his suppression motion. Finding no reversible error, we affirm.

## I.

One night in February 2024, around 8:30 p.m., a witness called 911 to report "screaming" and "hitting" inside a Dodge pickup truck parked next to her in a lot adjacent to the George Washington Memorial Parkway, a federal highway under the jurisdiction of the United States and under the direction of the National Park Service. The witness called 911 immediately after driving out of the lot. She reported her belief that a back-seat passenger was hitting or kicking the front-seat passenger—actions that were violent enough to cause the truck to rock. However, because it was dark and the truck's windows were tinted, the witness was not certain that the blows were hitting a person rather than the back of the seat. The witness reported that the screaming and rocking stopped as soon as she turned on the lights of her car and that the back-seat passenger was looking at her as she drove away. The witness gave police her first name and phone number and provided a description of the truck, including its license plate number.

The Park Police dispatcher sent officers to the parking lot to investigate a possible assault in progress and then called the witness back to get additional information. The

---

[1]    Because the charges against Romero Gonzales were misdemeanors, the magistrate judge had jurisdiction to try the case. *See* 18 U.S.C. § 3401(a).

witness confirmed that the perpetrator was a male passenger in the back seat of the truck. She again noted that she was not sure whether he was hitting the front-seat passenger or the seat, but stated that the perpetrator was hitting "really hard," causing the truck to jerk, and that she could hear yelling and screaming.

Park Police in two separate cruisers responded to the call. They did not see the described truck at the parking area, so they expanded their search area. Approximately 30 minutes after the 911 call, the officers found the still-running truck parked in a different lot adjacent to the Parkway. Because the officers had previously searched that lot, they knew the truck had reached the lot only recently. The officers confirmed that the truck and its license plate matched the information provided by the witness and then parked their cars in a way that boxed in the truck.

The officers observed a man in the driver's seat, but, because of the tinted windows and the height of the truck, they could not determine whether anyone else was in the truck. The officers approached the truck and asked Romero Gonzalez for his license and whether there was anyone else in the truck. After using their flashlights to look in the truck bed and through the back window to confirm that there was no one else in the truck, the officers began questioning Romero Gonzalez about what had been reported by the witness. The officers immediately observed signs that he was intoxicated—he appeared dazed, his eyes were bloodshot, he was slurring his words, and both he and the truck were reeking of alcohol. After concluding their questions about the possible assault, the officers directed Romero Gonzalez to get out of the truck. Two officers conducted field sobriety tests—which Romero Gonzalez failed—and a third searched the truck. The search revealed open

3

bottles of malt liquor, two almost-empty bottles of vodka, a knife covered in a powdery substance that appeared to be cocaine, and a plastic baggie containing the same powdery substance. Romero Gonzalez was arrested, and a second powder-filled baggie was found in his pocket during the search incident to arrest. Breath tests administered after his transport to the Park Police station showed his blood-alcohol levels at more than twice the legal limit. The government charged Romero Gonzalez with simple possession of cocaine, *see* 21 U.S.C. § 844(a); driving under the influence, *see* 36 C.F.R. § 4.23(a)(1); driving while intoxicated, *see id.* § 4.23(a)(2); having an open container of alcohol in a vehicle, *see id.* § 4.14(b); and driving with a suspended license, *see id.* § 4.2 (adopting Va. Code Ann. § 46.2-301).

Romero Gonzalez filed a motion to suppress all evidence obtained during the stop. He argued that he was seized when the officers pulled in around his truck and that the officers at that point in time lacked reasonable suspicion that he had committed an assault. The magistrate judge denied the motion. The court agreed that Romero Gonzalez was seized by the officers when they pulled into the parking area, but the court determined that the seizure was proper. The court concluded that the information provided by the 911 caller "was sufficient to establish reasonable, articulable suspicion that criminal activity was afoot," J.A. 68, and that Romero Gonzalez's presence in the truck identified by the witness "justif[ied] a temporary, limited detention . . . to investigate the information that the 911 caller had provided" and to "determine whether or not . . . there was somebody who needed police or medical attention," J.A. 69.

4

After denying the suppression motion, the court conducted a bench trial. The court found Romero Gonzalez guilty of possessing cocaine, driving while intoxicated, and having an open container of alcohol. The court found him not guilty of driving with a suspended license and dismissed the driving-under-the-influence count as duplicative. The court remanded Romero Gonzalez to serve a few hours in custody and imposed a one-year term of probation. As to the cocaine-possession count, the court declined to enter judgment and explained that it would dismiss the charge upon successful completion of probation. *See* 18 U.S.C. § 3607.

Romero Gonzalez appealed the denial of the suppression motion to the district court. *See* 18 U.S.C. § 3402. The district court adopted the reasoning of the magistrate judge and affirmed the convictions and sentence.[2] Romero Gonzalez appeals, challenging only the magistrate judge's denial of his motion to suppress.

## II.

The Fourth Amendment permits law enforcement to stop an automobile upon "articulable and reasonable suspicion that . . . the vehicle or an occupant is otherwise subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). "Officers have reasonable suspicion when they can point to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an

---

[2]    "An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial de novo; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005); *see* Fed. R. Crim. P. 58(g)(2)(D). "[O]ur review of a magistrate court's trial record is governed by the same standards as was the district court's appellate review." *Bursey*, 416 F.3d 305-06.

inchoate and unparticularized suspicion or hunch of criminal activity." *United States v. Howell*, 71 F.4th 195, 200 (4th Cir. 2023) (cleaned up).

"The degree to which the police may rely on a tip to establish reasonable suspicion depends on the tipster's veracity, reliability, and basis of knowledge." *United States v. Kehoe*, 893 F.3d 232, 238 (4th Cir. 2018). "Where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004). "Where a tip is anonymous, it must be accompanied by some corroborative elements that establish the tip's reliability." *Id.*

When reviewing "the denial of a motion to suppress, we view the facts in the light most favorable to the government." *United States v. Buster*, 26 F.4th 627, 630 (4th Cir. 2022). "Although we review the [magistrate judge's] findings of historical fact for clear error, we review de novo the ultimate legal conclusion of whether reasonable suspicion existed to justify police action." *Id.* (cleaned up).

## A.

Romero Gonzalez's arguments focus on the information the officers had when they seized him by blocking in his truck. He first contends that the information provided by the 911 caller did not give rise to a reasonable suspicion that illegal conduct was happening inside the truck. Romero Gonzalez does not find fault with the magistrate judge's conclusion that the caller—who gave her name and contact information to law enforcement when reporting what she had just witnessed—was herself reliable and credible. *See Kehoe*,

893 F.3d at 238 ("[C]ourts generally presume that a citizen-informant or a victim who discloses his or her identity and basis of knowledge to the police is both reliable and credible."). Instead, he argues that the magistrate judge "conflated the credibility of the tipster with the reliability of the information about possible criminal conduct she relayed." Brief of Appellant at 22. In Romero Gonzalez's view, while the 911 caller may have truthfully recounted everything she saw, the conduct she described did not reasonably give rise to a suspicion of *criminal* conduct:

> The tipster provided a description of movements and sounds, reporting general "hitting" or "swatting" motions—but not of those motions directed at any person—by someone in the vehicle around 8:25 p.m. That report was, at best, inconclusive as to whether an actual *crime* was occurring. The tipster herself said that she was unsure what she had witnessed; she did not and could not report that any person had been or was being hit. Moreover, in the 30 minutes that elapsed before Park Police encountered Mr. Romero Gonzalez, law enforcement received no additional information to make the prospect of actual, criminal conduct any likelier.

Brief of Appellant at 22-23. Because the 911 caller's information did not describe conduct that was obviously criminal, Romero Gonzalez argues that the information did not provide reasonable suspicion to support the stop. We disagree.

The 911 caller reported yelling and screaming coming from the truck parked next to her, accompanied by motions variously described as "hitting," "kicking," and "swatting" that were violent enough to cause the truck to visibly rock. This information suggested the possibility that an assault was underway in the truck. Moreover, the screaming and hitting stopped as soon as the caller turned on the lights to her car, and the back-seat passenger stared at the caller as she was driving out of the parking area. Because an experienced officer could reasonably view these actions as showing a consciousness of guilt, they

7

provided additional reasons to believe that an assault may be underway. *See United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023) (When considering whether reasonable suspicion existed, "we give due weight to the inferences and common sense judgments reached by officers in light of their experience and training in identifying suspicious circumstances that may appear unremarkable to a layman.") (cleaned up).

While the caller's uncertainty about whether the blows were hitting a person rather than the back of the seat is relevant to the inquiry, it is not dispositive. *See Perkins*, 363 F.3d at 327 ("[T]he mere fact that particular conduct may be susceptible of an innocent explanation does not establish a lack of reasonable suspicion."). Reasonable suspicion "does not deal with hard certainties, but with probabilities," *United States v. Cortez*, 449 U.S. 411, 418 (1981), and the inquiry thus focuses on the possibility that "criminal activity *may* be afoot," *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (emphasis added). In this case, when all the facts are considered together, we believe that, despite the 911 caller's uncertainty, the information available to the officers was sufficient to create reasonable suspicion that an assault was underway. *See Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (explaining that reasonable suspicion requires only "a minimal level of objective justification for making the stop"); *United States v. Gist-Davis*, 41 F.4th 259, 264 (4th Cir. 2022) ("The quantum of proof necessary to demonstrate reasonable suspicion is considerably less than a preponderance of the evidence.") (cleaned up).

B.

Romero Gonzalez also contends that even if the 911 caller's information sufficiently described a possible crime, the officers had no reasonable basis to suspect *him* of engaging

8

in criminal behavior given that the caller repeatedly said that the back-seat passenger was doing the hitting and kicking.

As Romero Gonzalez argues, reasonable suspicion that a crime may be in the works is not enough to detain everyone in the general vicinity. Instead, "[t]he suspicion also must be particularized; an investigatory stop must be justified by an objective basis to suspect that the particular person stopped is, or is about to be, engaged in a particular crime." *Critchfield*, 81 F.4th at 393 (cleaned up). Nonetheless, while the cases often speak in singular terms—*the* individual stopped—the particularity requirement does not preclude investigatory detentions of small groups.

For example, in *United States v. Murillo-Lopez*, 151 F.4th 584 (4th Cir. 2025), officers seeking to execute an arrest warrant conducted a traffic stop of a truck occupied by several men. We concluded that the officers had reasonable suspicion to believe that the person named in the warrant was in the truck because the officers, who were "[e]quipped with a description and photograph of the target," had been watching a few specific houses after receiving information about the target's location and "saw two or three men—at least one of whom fit the target's physical description—leave one of the homes under surveillance and drive off in the Ford Explorer that was eventually stopped." *Id.* at 590. Because the officers had reasonable suspicion that the target they sought was one of the occupants of the car, we rejected the defendant's constitutional challenge to the stop. *See id.*; *see also United States v. Phillips*, 1999 WL 155941 at *2 (4th Cir. 1999) (unpublished) ("[I]t was entirely reasonable for the officers to believe that Phillips, or any other member of the small group, had been involved in a dangerous crime and was possibly still armed.

9

The fact that there were now three men in the group, while only two men had been involved in the shooting, does not make the stop and patdown of all three men unreasonable under the circumstances."). In this case, the 911 caller's information provided reasonable suspicion to believe that a backseat passenger might be committing an assault inside a specifically identified truck. Once the truck was located, that information justified an investigatory detention of everyone inside the truck, just as it did in *Murillo-Lopez*.[3]

Romero Gonzalez insists, however, that the analysis must be different in this case because the 911 caller identified the backseat passenger as the only perpetrator and the magistrate judge concluded that the officers knew he was alone in the truck when they detained him. We disagree.

The magistrate judge did not conclude as a factual matter that the officers knew Romero Gonzalez was alone in the truck; the court simply stated—correctly—that Romero Gonzalez in fact was alone when the officers approached. *See* J.A. 69 ("Mr. Romero Gonzalez was found in the car alone."). This observation by the court simply cannot be understood as a factual finding about the officers' knowledge, particularly since the court also noted that the officers asked Romero Gonzalez as soon as they approached if anyone else was in the car.

---

[3] In his brief, Romero Gonzalez frequently emphasizes that the truck was located and he was detained approximately 30 minutes after the 911 call was received. Romero Gonzalez, however, has never argued that the delay between receiving the information and locating the truck rendered the information stale and thus incapable of creating reasonable suspicion.

Because the magistrate judge did not conclude that the officers knew Romero Gonzalez was alone in the truck when they found him (and the record would not support such a conclusion), we need not consider whether the reasonable-suspicion analysis would be different had those been the facts. Instead, it is sufficient to say that the 911 caller's information created reasonable suspicion that criminal activity was afoot in the truck. The information was sufficiently particularized, as it narrowed the universe of possible suspects to the occupants of the particularly described truck. Investigating the report required the officers to stop the truck and thus briefly detain all persons who happened to be in the truck; reasonable suspicion did not disappear simply because the driver of the truck was the only person visible to the officers at the time of the seizure.[4] Even if the officers at the moment of the stop did not believe the driver was the perpetrator of the suspected crime, a constitutionally permissible traffic stop often ensnares individuals who are not suspected of committing a crime. *See, e.g., United States v. Hampton*, 628 F.3d 654, 658 (4th Cir. 2010) (explaining that "an officer making a traffic stop may order passengers to get out of the car . . . as a precautionary measure, without reasonable suspicion that the passenger

---

[4]     Romero Gonzalez appears to take issue with the government's characterization of this case as involving a traffic stop, suggesting that the "temporary detention" involved in traffic stops is somehow different from the "seizure of a person in a parked car" that occurred in this case. Reply Brief at 16. Because a "temporary detention" is in fact a seizure, we find this argument somewhat puzzling. And while this case may not involve the most typical kind of traffic stop, it bears all the relevant hallmarks of such a stop, as Romero Gonzalez was found in the driver's seat of a still-running truck in a parking area immediately adjacent to a highway. In any event, the principles of *Terry v. Ohio*, 392 U.S. 1 (1968), govern both traffic stops and investigatory detentions of individuals on the street. Thus, regardless of the label we might attach to the detention at issue here, the question is whether the initial seizure was supported by reasonable suspicion.

11

poses a safety risk"). We therefore reject Romero Gonzalez's claim that the officers lacked sufficiently particularized suspicion at the moment he was seized.

## III.

To summarize, we conclude that the information provided by the 911 caller was sufficient to create reasonable suspicion that someone was being assaulted inside the truck and that the officers appropriately detained Romero Gonzalez even though he was the only person visible in the truck at the moment of detention. Because the magistrate judge properly denied the motion to suppress and Romero Gonzalez does not challenge any other aspect of his arrest or trial, we hereby affirm his conviction and sentence.

*AFFIRMED*